UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANE AND STEPHANIE GOODEN, h/w Plaintiff vs. PENTAGROUP FINANCIAL, LLC Defendant | Case Number CIVIL COMPLAINT JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

**COMES NOW**, Plaintiffs, Shane and Stephanie Gooden, h/w, by and through their undersigned counsel, Bruce K. Warren, Esquire and Brent F. Vullings, Esquire of Warren & Vullings, LLP, complaining of Defendant, and respectfully avers as follows:

**I. INTRODUCTORY STATEMENT**

1. Plaintiffs, Shane and Stephanie Gooden, h/w are adult natural persons and brings this action for actual and statutory damages and other relief against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

**II. JURISDICTION**

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

3. Venue in this District is proper in that the Defendant has an address in this District.

### III. PARTIES

4. Plaintiffs, Shane and Stephanie Gooden, h/w, are adult natural persons with a mailing address at P.O. Box 1285, Nixa, MO 65714. At all times material and relevant hereto, Plaintiffs are "consumers" as defined by the FDCPA, 15 U.S.C. § 1692a(2).

5. Defendant, Pentagroup Financial, LLC ("Defendant"), at all times relevant hereto, is and was a corporation engaged in the business of collecting debt within the State of Missouri and the State New Jersey with a New Jersey address of 820 Bear Tavern Road, Trenton, NJ 08628.

6. Defendant is engaged in the collection of debts from consumers using the telephone and mail. Defendant regularly attempts to collect consumer debts alleged to be due to another. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### IV. FACTUAL ALLEGATIONS

7. In or around June 2010, Plaintiffs began receiving phone calls from Defendant regarding an alleged debt due to Chase Bank in the amount of $8,953.99.

8. Defendant contacted a family member of the Plaintiff, Shane leaving a message on the answering machine stating that Defendant was a collection agency calling for the Plaintiff, Shane.

9. On another occasion, Defendant attempted to contact the Plaintiff, Shane at the Plaintiff, Shane's place of employment.

10. Defendant used the wrong extension to reach the Plaintiff, Shane and spoke with a co-worker telling the co-worker that Defendant was calling in regard to an outstanding debt and continued to speak with the co-worker for approximately three minutes.

11. Plaintiffs received a letter from Defendant dated August 17, 2010 regarding the alleged debt.

12. In or around August 2010, Plaintiffs entered into a monthly payment agreement with Defendant for a settlement of $3,760.00.

13. Plaintiffs' first payment in the amount of $240.00 was paid in October 2010.

14. Plaintiffs paid Defendant in a timely manner, $120.00 on November 26th and $120.00 on December 26th with their next payment of $120.00 due on January 28, 2011.

15. Plaintiffs made an agreement with Defendant that after the January payment, Plaintiffs would call and discuss a settlement payout for the remainder.

16. The Plaintiff, Shane was going through a background check for employment and needed to show proof that he was paying on his debts.

17. On or around November 23, 2010, the Plaintiff, Stephanie contacted Defendant and asked Defendant to send Plaintiffs information regarding payments made and proof of the payment agreement.

18. The Plaintiff, Stephanie spoke with Defendants account manager, "Charise Benjamin" who never mini-Mirandized the Plaintiff, Stephanie.

19. The Plaintiff, Stephanie asked "Charise Benjamin" for copies of Plaintiffs payment arrangements and payments that have been drafted from Plaintiffs' account. "Charise Benjamin" replied to the Plaintiff, Stephanie's request by telling her, "We cannot do that, we've already sent the letters once."

20. The Plaintiff, Stephanie told "Charise Benjamin" that Plaintiffs no longer had copies of the records and needs Defendant to resend them but "Charise Benjamin" replied, "It's not my fault you lost the paperwork and we are only required to send it once!"

21. The Plaintiff then called Defendant back in hopes to speak with another agent of Defendant but instead was transferred back to "Charise Benjamin."

22. Defendant's agent "Charise Benjamin" would not work with the Plaintiff, Stephanie and continued to deny the Plaintiff, Stephanie's request for the paperwork.

23. The Plaintiff, Stephanie was upset by the attitude "Charise Benjamin" gave the Plaintiff, Stephanie at which point the Plaintiff, Stephanie proceed to ask "Charise Benjamin" if she could be transferred to someone "more competent."

24. The Plaintiff, Stephanie's comment angered Defendant's agent, "Charise Benjamin" even more causing "Charise Benjamin" to yell at the Plaintiff, Stephanie, "How dare you call me incompetent, don't talk to me like you talk to your kids!" and proceed to hang up on the Plaintiff, Stephanie.

25. The Plaintiff, Stephanie made a third attempt to speak with an agent of Defendant other than "Charise Benjamin."

26. The Plaintiff, Stephanie was again connected to "Charise Benjamin" and when the Plaintiff, Stephanie asked to be transferred to a manager, "Charise Benjamin" told the Plaintiff, Stephanie that the manager was not in.

27. Defendant's agent, "Charise Benjamin" continued on to say, "Notice how you're always being transferred to me?! Well that's because I'M your account manager!"

28. The Plaintiff, Stephanie then asked "Charise Benjamin" for the manager's extension so that the Plaintiff, Stephanie could leave a message. "Charise Benjamin" told the Plaintiff, Stephanie that she did not know the manager's extension and proceeded to hang up.

29. Defendant called Plaintiffs back three times in a row after the conversation but the Plaintiff, Stephanie did not pick up.

30. The Plaintiff, Stephanie decided to try one last time to contact a manager and when she called back, Defendant's receptionist transferred the Plaintiff, Stephanie to "Mr. Michael."

31. The Plaintiff, Stephanie explained the issue to "Mr. Michael" and was told that he will "pull up" copies and send them to Plaintiffs.

32. Defendant's agent, "Mr. Michael" then continued on to threaten the Plaintiff, Stephanie that Plaintiffs were "high suit risk" and that Plaintiffs can be sued at any time since they were only making "bottom of the barrel" payments which is not enough to keep the original creditor from suing and that Plaintiffs should pay more to keep from being sued.

33. The Plaintiff, Stephanie then responded to "Mr. Michael's" statement, "Your company accepted the payment terms and they were the ones that presented us with these terms and allowed us to accept them."

34. The Plaintiff, Stephanie then went on to tell "Mr. Michael" that Plaintiffs made the payments as a "good faith" gesture to Chase and that Plaintiffs are going to pay the alleged debt but cannot afford the sum of $3,760.67 at this time.

35. Plaintiffs payments are scheduled until January 28, 2011 and the Plaintiff, Stephanie does not understand why Defendant would threaten Plaintiffs claiming that Plaintiffs are "high suit risk."

36. On or around November 24, 2010, Defendant sent Plaintiff a letter in compliance with the Plaintiff, Stephanie's request, however, Defendant failed to provide any of the information in which Plaintiffs had specifically sought.

37. The Defendant knew or should have known that their actions violated the FDCPA. Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

38. At all times pertinent hereto, Defendant was acting by and through it agents, servants and/or employees, who were acting with the scope and course of their employment and under the direct supervision and control of Defendant herein.

39. At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiffs herein.

40. As a result of Defendant's conduct, Plaintiffs have sustained actual damages, including, but not limited to, injury to Plaintiffs' reputation, invasion of privacy, damage to Plaintiffs' credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss and she will continue to suffer same for an indefinite time in the future, all to her great detriment and loss.

## COUNT I – FDCPA

41. The above paragraphs are hereby incorporated herein by reference.

42. At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by the Plaintiffs for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

43. The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of:

| | |
|---|---|
| §§ 1692b(1): | Contact of Third Party: Failed to identify themselves, or failed to state that collector is confirming or correcting location information |
| §§ 1692b(2): | Contact of Third Party: Stated that the consumer owes any debt |
| §§ 1692c(b): | With anyone except consumer, consumer's attorney, or credit bureau concerning the debt |
| §§ 1692d: | Any conduct the natural consequence of which is to harass, oppress, or abuse any person |
| §§ 1692d(2): | Profane language or other abusive language |

| | | |
|---|---|---|
| §§ 1692d(5): | | Caused the phone to ring or engaged any person in telephone conversations repeatedly |
| §§ 1692e: | | Any other false, deceptive, or misleading representation or means in connection with the debt collection |
| §§ 1692e(5): | | Threaten to take any action that cannot legally be taken or that is not intended to be taken |
| §§ 1692e(10): | | Any false representation or deceptive means to collect a debt or obtain information about a consumer |
| §§ 1692e(11): | | Communication fail to contain the mini-Miranda warning: "This is an attempt to collect a debt… communication is from a debt collector." |
| §§ 1692f: | | Any unfair or unconscionable means to collect or attempt to collect the alleged debt |

**WHEREFORE**, Plaintiffs respectfully prays that judgment be entered against the Defendant, Pentagroup Financial, LLC for the following:

a. Actual damages;

b. Statutory damages pursuant to 15 U.S.C. § 1692k;

c. Reasonable attorney's fees and litigation expenses, plus costs of suit; and

d. Such additional and further relief as may be appropriate or that the interests of justice require.

## V.  JURY DEMAND

Plaintiffs hereby demand a jury trial as to all issues herein.

**Respectfully submitted,**

**WARREN & VULLINGS, LLP**

**Date:  December 30, 2010**          **BY:  /s/  Bruce K. Warren**
Bruce K. Warren, Esquire


**BY:  /s/  Brent F. Vullings**
Brent F. Vullings, Esquire

Warren & Vullings, LLP
1603 Rhawn Street
Philadelphia, PA  19111
215-745-9800    Fax 215-745-7880
Attorneys' for Plaintiff